IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BOBBY G. SLATE, et al.,       )
                              )
        Plaintiffs,            )
                              )
   v.                          )          1:09CV852
                              )
RHONDA L. BYRD, et al.,       )
                              )
        Defendants.            )

## MEMORANDUM OPINION, ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action comes before the undersigned United States Magistrate Judge for disposition of Plaintiffs' Motion to Show Cause and for Contempt (Docket Entry 118) and for a recommended ruling on Defendants Rhonda Byrd, Joseph Byrd, John S. Washington, Charles Washington's and all Related Company's Motion for Relief from Orders for Receivership and Injunction (Docket Entry 122). (See Docket Entry dated Mar. 18, 2013.)[1]  For the reasons that follow, the undersigned will grant Plaintiffs' Motion to Show Cause and will recommend that the Court deny Defendants' Motion for Relief.

---

[1] Because an order to show cause merely affords "an opportunity for [a litigant] to explain his [or her] behavior," Yates v. Arkin, 242 F. App'x 478, 482 & n.2 (10th Cir. 2007), it constitutes a non-dispositive pretrial matter as to which a Magistrate Judge may enter an order, id. (referencing 28 U.S.C. § 636); however, a final determination about the continued propriety of injunctive relief constitutes a matter reserved for a United States District Judge, such that a Magistrate Judge may only enter a recommendation, see Peters v. Brants Grocery, 990 F. Supp. 1337, 1340 & n.1 (M.D. Ala. 1998); see also 28 U.S.C. § 636(b)(1)(A) & (B).

BACKGROUND

Plaintiffs move the Court "for an order directing [D]efendants Rhonda Byrd [('Rhonda')], Charles Washington [('Charles')], and QuintonEli Development, Inc. ('QuintonEli') to show cause why they should not be held in civil contempt for violating the orders granting a preliminary injunction and appointing a receiver in this case, by their conduct in entering into business contracts, opening new bank accounts, and being paid more than $200,000 without reporting any of these events to the [R]eceiver." (Docket Entry 118 at 2.)[2]  In support, Plaintiffs recount that "[t]his action was filed in state court on October 17, 2008 [and] [o]n October 15, 2009, the state court granted [P]laintiffs' motion for an injunction and appointment of receiver against [Rhonda], [Charles], QuintonEli, [Joseph] Byrd, and the other corporate [D]efendants owned by [Rhonda] and [Charles] . . . [which was] commemorated in two orders [] issued the same day [(the 'Orders')]." (Id., ¶ 1 (internal footnote omitted).)[3]  Plaintiffs further note that the Orders "gave [the Receiver] the authority to 'oversee, manage, audit and otherwise handle the business, personal and joint accounts and assets of [Rhonda, Charles, and QuintonEli].'" (Id., ¶ 2 (quoting "Report of Receiver, Ex. A").)

As Plaintiffs observe,

---

[2] Pin citations refer to the pagination in the CM/ECF footer.

[3] Plaintiffs' Motion for a Preliminary Injunction and Appointment of a Receiver appears as Docket Entry 1-11 at 35-42. The Orders of the North Carolina state court granting that motion appear at Docket Entry 1-14 at 5-17 and attached to Plaintiffs' instant Motion to Show Cause at Docket Entry 119-1 at 8-17.

> [i]n this regard,[the Receiver] was granted: "the power to: (1) manage the principal financial holdings of these [D]efendants; (2) access and manage any and all corporate and individual accounts of any kind; (3) manage any and all properties in which these [D]efendants have an interest; (4) sign and approve all outgoing business and personal expenses; (5) take whatever action may be necessary to undo or rescind any previous conveyance of real or personal property that the [R]eceiver deems to be fraudulent or for the purpose of devaluing any future judgment obtained by [P]laintiffs; and (6) hire or retain any third-party company necessary to assist the [R]eceiver in performing his duties."

(Id. (quoting Docket Entry 119-1 at 10, 15).) Moreover, Plaintiffs highlight that "[t]he orders also provided, '*If any profits are obtained from any of the [D]efendant businesses*, or if any additional income or profit is generated by the individual [D]efendants, *the [R]eceiver shall distribute, maintain, or manage these funds <u>in his sole discretion</u>*.'" (Id. (italics and underlining provided by Plaintiffs).) Plaintiffs contend that, "[c]ontrary to [those] commands . . ., [Rhonda, Charles, and QuintonEli] have conducted business in South Carolina and failed to report such business to the [R]eceiver. As shown in the accompanying [R]eport of [R]eceiver, the proceeds of these business activities exceed $200,000. [Rhonda, Charles, and QuintonEli] have willfully hidden these proceeds from the [R]eceiver by setting up secret bank accounts to avoid the [R]eceiver's oversight." (Id., ¶ 4 (internal citations omitted).)

In response, Defendants filed a Motion for Relief from Orders for Receivership and Injunction (Docket Entry 122).[4] Through that Motion, Defendants contend:

- "[t]he [R]eceiver has had approximately thirty-eight months (38) to marshal and sequester the allegedly fraudulently obtained asset [sic] to protect the [P]laintiffs [sic] recovery" (id., ¶ 8);
- "[t]he [R]eceiver did not file a report with any court until January 18, 2013, and even then he did not report on the whereabouts, status or disposition of any of the 'fraudulently' obtained assets or about the shell companies that [P]laintiff was [sic] so very concerned about in its motion [for injunction]" (id., ¶ 9);
- "[t]he [R]eceiver has not been involved or concerned with the [Defendants'] professional and personal activities in the last twenty four (24) months" (id., ¶ 10);
- "[t]he portion of the order on receivership that relates to property that is not the subject of the action is void as the scope of the receivership to monitor [Defendants'] employment, compensation and activities exceeds the statutory boundaries of N.C. [Gen. Stat.] § 1-502(1) over [P]laintiffs' 'apparent right to property which is the

---

[4] Although Plaintiffs directed their instant Motion to Show Cause only at Rhonda, Charles, and QuintonEli (see Docket Entry 118 at 2 n.1), all Defendants subject to the Orders seek relief from the Orders by way of their instant Motion for Relief (see Docket Entry 122 at 1). Moreover, Defendants' brief in support of their Motion for Relief is also styled as a brief in opposition to Plaintiffs' Motion to Show Cause. (See Docket Entry 123 at 1.)

-4-

Case 1:09-cv-00852-TDS-LPA   Document 161   Filed 05/16/13   Page 4 of 18

subject of the action and in the possession of an adverse party.' In re Penny, 10 F. Supp. 638, 640-41 (M.D.N.C. 1935)" (id., ¶ 11);

- "Plaintiffs have an adequate remedy at law in that the case is set for trial on April 1, 2013, and [P]laintiffs will (or will not) have a judgment against [Defendants] upon which they may execute through the all [sic] statutory means afforded [P]laitniffs [sic]" (id., ¶ 13); and

- "[t]he receivership's extension to encompass future compensation of [Defendants] is beyond the remedy at law afforded judgment creditors in North Carolina" (id., ¶ 14).

"Defendants pray the [C]ourt for an order 1) setting aside the receivership, or 2) in the alternative, suspend [sic] the authority of the [R]eceiver over all income and compensation earned by [Defendants] subsequent to his appointment." (Id. at 4.) Plaintiffs responded to Defendants' instant Motion (Docket Entry 142) and Defendants replied (Docket Entry 150).

DISCUSSION

Defendants' Motion for Relief

"All injunctions, orders and other proceedings had in [an action removed from a State court to a district court of the United States] prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. "Upon removal, the orders entered by the state court are

-5-

treated as though they had been entered by the federal court." Nasso v. Seagal, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003); see also In re McCraney, 439 B.R. 188, 201 (Bankr. D.N.M. 2010) (noting that, after removal, "the federal court can perform any act that it could have as if the case originated in federal court" and citing cases).

The Parties' briefing on this matter addresses solely relief under Federal Rule of Civil Procedure 60(b), specifically under subsections (b)(4), (b)(5) and (b)(6). (See Docket Entries 122, 123, 142, 150.) However, because Rule 60(b) only applies to final orders, see Fed. R. Civ. P. 60(b), and because the Orders at issue are interlocutory, see In re Topper, 23 F. App'x 127, 128 (4th Cir. 2001) ("A final order is one that disposes of all the issues in dispute as to all parties, and 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting Catlin v. United States, 324 U.S. 229 (1945)), only Rule 60(b)(5) appears potentially applicable, and then only to the extent Defendants seek prospective relief from the preliminary injunction, see Centennial Broadcasting, LLC v. Burns, 433 F. Supp. 2d 730, 733 (W.D. Va. 2006) ("Although a preliminary injunction is not a 'final' order or judgment for purposes of Rule 60(b), courts nonetheless apply the general equitable principles set forth in Rule 60(b)(5), which provides for relief from a final judgment 'if it is no longer equitable that the judgment should have prospective application.'"). Rather, Defendants' instant Motion for Relief is more appropriately addressed under Rule 54(b) of the Federal Rules

of Civil Procedure, which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Accordingly, Rule 54(b) allows the Court to "revisit interlocutory orders at any time prior to final judgment . . . when justice requires it, but [such reconsideration] is discretionary . . . ." United States v. Duke Energy Corp., 218 F.R.D. 468, 473-74 (M.D.N.C. 2003) (Eliason, M.J.).

In that regard, although "the standards governing reconsideration of final judgments under Fed[eral] R[ule of] Civ[il] P[rocedure] 59(e) do not limit a court's authority to reconsider an interlocutory decision, courts in the Fourth Circuit have routinely looked to those factors as a starting point in guiding their discretion under Fed[eral] R[ule of] Civ[il] P[rocedure] 54(b)." Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc., No. 1:05CV955, 2011 WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011) (unpublished) (internal citations omitted). Those factors permit reconsideration: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [earlier]; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Additionally, in the context of reconsideration of interlocutory orders under

Federal Rule of Civil Procedure 54(b), this Court "previously has declared that '[a] motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence.'" Volumetrics Med. Imaging, 2011 WL 6934696, at *2 (quoting Duke Energy, 218 F.R.D. at 474).

"Conversely, 'a motion to reconsider [under Federal Rule of Civil Procedure 54(b)] is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter.'" Id. (quoting Hinton v. Henderson, No. 3:10cv505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (unpublished) (internal citations and quotation marks omitted)). In other words, "[e]ven under th[e] expanded standard [applicable to interlocutory orders], it is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly." North Carolina ex rel. Cooper v. Tennessee Valley Auth., No. 1:06CV20, 2008 WL 2115159, at *2 (W.D.N.C. May 16, 2008) (unpublished) (internal quotation marks omitted). This approach makes sense not only because "[t]he limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court [but also because] . . . allow[ing] motions to reconsider offhandedly or routinely would result in an unending motions practice." Wiseman v. First

-8-

Case 1:09-cv-00852-TDS-LPA   Document 161   Filed 05/16/13   Page 8 of 18

Citizens Bank & Trust Co., 215 F.R.D. 507, 509 (W.D.N.C. 2003); accord, e.g., Coryn Grp. II, LLC v. OC Seacrets, Inc., No. WDQ-08-2764, 2011 WL 4701749, at *2 n.4 (D. Md. Sept. 30, 2011) (unpublished) ("Routine reconsideration of interlocutory orders would undermine judicial economy and respect for the finality of decisions.").

Under this standard, Defendants have failed to establish any basis for the Court to reconsider the Orders. They have identified neither "an intervening change in controlling law [nor] new evidence not available [earlier]," Pacific Ins., 148 F.3d at 403. To the extent Defendants' discussions of N.C. Gen. Stat. § 1-502 and In re Penny represent arguments that the Orders are "a clear error of law," Pacific Ins., 148 F.3d at 403, they, too, fail. As an initial matter, the court's "power to appoint a receiver is not limited to that given by statute; a court has inherent power to appoint a receiver." Doe v. Duke Univ., 118 N.C. App. 406, 409, 455 S.E.2d 470, 471 (1995); see also First United Bank & Trust v. Square at Falling Run, LLC, No. 1:11CV31, 2011 WL 1563108, at *8 (N.D.W. Va. Mar. 31, 2011) (unpublished) ("A district court's authority to appoint a receiver derives from its inherent equitable powers under the common law." (citing Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006))); Sinclair v. Moore Cent. R. Co., 228 N.C. 389, 395, 45 S.E. 2d 555, 560 (1947) ("The power of the court to appoint a receiver in proper cases and upon a proper showing is not limited by prevailing statutory provisions.

It is one of the inherent powers of a court of equity.").[5]
Moreover, the facts in In re Penny are inapposite and said decision thus does not support the contention that N.C. Gen. Stat. § 1-502 warrants granting the relief requested.

In this regard, Defendants cite the following language:

> "When a court undertakes to reach out and appoint a receiver over property which was not the subject matter of the controversy, it has no colorable jurisdiction to do so, and an order so made has been declared to be utterly void and null. Such void or null orders can be [attacked] collaterally because if the property is not involved in the litigation or properly brought into the litigation the court has no jurisdiction of the property. 1 Clark on Receivers, § 75; Hoiles v. Watkins, 117 Ohio St. 165, 157 N.E. 557, 61 A.L.R. 1203, 1207 [(Ohio 1927);] Maxwell v. McDaniels[, 184 F. 311 (C.A.4 1910).]"

(Docket Entry 123 at 6 (quoting In re Penny, 10 F. Supp. at 641).) They, in turn, argue that any profits earned, because they resulted from contracts that came into existence only after the events underlying this action, cannot fall within the scope of the Receiver's lawful powers, such that those portions of the Orders are void. However, in In re Penny, the plaintiffs had made no claim whatsoever to the assets subject to the receivership. See In re Penny, 10 F. Supp. at 640. Here, on the other hand, Plaintiffs established an apparent right to the assets of Rhonda, Charles and QuintonEli in that Plaintiffs moved the state court to appoint a

---

[5] The Parties' briefing focuses entirely on North Carolina law. However, given that, "[u]pon removal, the orders entered by the state court are treated as though they had been entered by the federal court," Nasso, 263 F. Supp. 2d at 608, it is not clear that North Carolina law governs. Regardless, as Defendants have failed to provide any pertinent authority under either North Carolina or federal law supporting their position, the same outcome results and the Court need not consider this matter further.

receiver, in relevant part, on contentions that Rhonda and Charles defrauded Plaintiff Bobby Slate and Slate's companies of certain funds and subsequently established several entities, including QuintonEli, "for the purpose of concealing and investing funds embezzled from [P]laintiffs." (Docket Entry 1-11 at 38, ¶ 7.) Thus, In re Penny does not support Defendants' position and Defendants have not presented any probative authority, whether under state or federal law, rendering the Orders clearly erroneous. Accordingly, Defendants have not met the standard of Rule 59(e) (or, by proxy, Rule 54(b)).

Nor is prospective relief warranted under the equitable principles of Rule 60(b)(5). Said Rule provides for prospective relief if an order "has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Moreover, "courts have identified a non-exhaustive list of factors to consider in determining whether to dissolve an injunction, which include the following: circumstances leading to the injunction and nature of conduct to be prevented; length of time since issuance; whether compliance has occurred; likelihood that the conduct sought to be prevented will recur absent the injunction; and whether the objective of the injunction has been achieved." North Carolina Alliance for Transp. Reform, Inc. v. United States Dep't of Transp., 713 F. Supp. 2d 491, 512 (M.D.N.C. 2010) (Schroeder, J.). "The party seeking relief from an order on the grounds that the order is no longer equitable bears the burden

of establishing that changed circumstances warrant relief." Telesis Cmty. Credit Union v. Mantiff 1215 Statesville Hospitality LLC, No. 5:09cv118, 2010 WL 892116, at *1 (W.D.N.C. Mar. 5, 2010) (unpublished) (citing Horne v. Flores, 557 U.S. 433, 447 (2009)).

Defendants fail to develop any argument under this standard. (See Docket Entry 123.) The only portion of Defendants' briefing that arguably supports such a contention appears as follows:

> With trial and judgment less than six weeks away, it is inequitable for the [D]efendants to be further subjected to [P]laintiffs' harassment under the auspices of the [R]eceiver. [Charles] and [Rhonda] should be allowed to obtain project and development work free from the prying eyes of the [R]eceiver.
> The [P]laintiffs [sic] remedy at law is to obtain a judgment and use the statutory provision of execution. The remedy is ***not*** contempt. The receivership orders should vacated [sic], amended or [D]efendants relieved from their operation.

(Id. at 7 (emphasis in original).) However, such conclusory statements do not explain why Rhonda and Charles, who Plaintiffs alleged embezzled a substantial amount of money, "should be allowed to obtain project and development work free from the prying eyes of the [R]eceiver." (Id.) Nothing before the Court addresses the underlying issue - i.e., that Plaintiffs established an apparent right to the funds of Rhonda and Charles, including those used to capitalize QuintonEli, and the ensuing concern that, without a receiver, said funds may be lost before judgment or any execution of that judgment can occur. Defendants present no challenges to Plaintiffs' prior establishment of the apparent right to the assets of Charles, Rhonda, and/or QuintonEli; nor have Defendants submitted any information to allay concerns regarding potential

harm to Plaintiffs absent oversight by the Receiver.[6] In fact, given that the instant Motion for Relief comes before the Court only after Defendants took actions which Plaintiffs contend involved further concealment of funds, the record does not dispel concerns that led to the Receiver's appointment. In sum, Defendants have failed to establish any grounds for prospective relief from the Orders under the equitable principles of Rule 60(b)(5).

<u>Plaintiffs' Motion to Show Cause and for Contempt</u>

Given the absence of grounds for reconsideration of the Orders under Rule 54(b) or prospective relief from the Orders under the equitable principles of Rule 60(b)(5), resolution of the merits of Plaintiffs' Motion to Show Cause and for Contempt (Docket Entry 118) remains necessary. "The party moving for a finding of civil contempt has the initial burden of showing by clear and convincing evidence: (1) the existence of a valid order of which the alleged contemnor had actual or constructive knowledge; (2) that the order was in the moving party's favor; (3) that the alleged contemnor has violated the terms of the order by his conduct and has at least constructive knowledge of this violation; and (4) that the moving party has been harmed by the contempt." C.F.T.C. v. Capitalstreet

---

[6] Moreover, Defendants' argument that "[P]laintiffs [sic] remedy at law is to obtain a judgment and use the statutory provision of execution . . . [and] ***not*** contempt" (Docket Entry 123 at 7 (emphasis in original)) appears to confuse the present issue. Defendants' ultimate success at trial does not affect whether Defendants violated an order of the Court. Nor would entry of any judgment affect concerns regarding the ability of Plaintiffs to collect on said judgment.

-13-

Fin., LLC, No. 3:09cv387-RJC-DCK, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (unpublished) (citing Ashcroft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)). Plaintiffs must carry this burden "with competent, credible and admissible evidence." Major v. Orthopedic Equip. Co., Inc., 496 F. Supp. 604, 611 (E.D. Va. 1980); see also Ri Ra Holdings LLC v. Ri Ra, Madra Mor, Inc., No. 1:99-CV-0374, 2002 WL 1009730, at *6 (M.D.N.C. May 16, 2002) (Beaty, J.) (unpublished) (citing same). "[U]nless Plaintiff[s] make[] the necessary showing, . . . there is no need to require Defendants to show cause why they should not be held in contempt." Ri Ra Holdings, 2002 WL 1009730, at *6.

Plaintiffs have carried their burden here. In this regard, Plaintiffs argue that, "[c]ontrary to the commands of the [O]rders . . ., [Rhonda, Charles, and QuintonEli] have conducted business in South Carolina and failed to report such business to the [R]eceiver. . . . [T]he proceeds of these business activities exceed $200,000. [Rhonda, Charles, and QuintonEli] have willfully hidden these proceeds from the [R]eceiver by setting up secret bank accounts to avoid the [R]eceiver's oversight." (Docket Entry 118, ¶ 4 (internal citations omitted).) In support, Plaintiffs have provided the Receiver's Report in which the Receiver expresses his opinions that:

- Rhonda, Charles and QuintonEli "have violated the preliminary injunction and appointment of receiver in that they have been engaged in business transactions in the State of South Carolina which has generated profit that has not been

-14-

maintained, managed or because it was not reported to Receiver as ordered by him pursuant to his authority under the Court's Order" (Docket Entry 119-1 at 5);

- "upon prior inquiry regarding [Rhonda, Charles, and QuintonEli's] business activities in South Carolina, Defendants told Receiver that negotiations had fallen through" (id.);

- Rhonda, Charles and QuintonEli "willfully circumvented [the] receivership by opening alternative bank accounts with TD Bank to avoid Receiver's access and management of the corporate and individual accounts" (id.); and

- subsequently, Rhonda, Charles and QuintonEli "have refused to comply with Receiver's demand" that they "produce all information relating to business transactions and income and/or profit produced between October 1, 2010 and January 10, 2013" (id.).

Plaintiffs have also filed the affidavit of Ralph Braden, who avers that, in connection with certain business transactions with Charles, Rhonda and QuintonEli in South Carolina, he paid them "in excess of $200,000.00 between November 27, 2010 and June 11, 2012." (Id. at 35.) Mr. Braden attached a true and accurate copy of a schedule of payments made to Defendants to that affidavit (see id. at 44), along with copies of cancelled checks and wiring confirmations indicating the transmission of said payments to bank accounts at TD Bank (see id. at 46-54). Plaintiffs contend that these actions damaged them in that:

-15-

> [t]he purpose of the [O]rders was to protect [P]laintiffs from dissipation and concealment of [D]efendants' assets prior to the entry of the judgment in this case. In subverting the receivership order, [Rhonda, Charles, and QuintonEli] have attempted to thwart this purpose and to render themselves judgment-proof. In addition, [their] actions have caused the [R]eceiver to expend time and effort uncovering [Rhonda, Charles, and QuintonEli's] misbehavior, which time and effort is paid for by [P]laintiffs pursuant to the [O]rders. [Rhonda, Charles, and QuintonEli] have also caused [P]laintiffs' [sic] to expend time, money, and attorneys' fees in pursuing the instant motion to enforce the [O]rders, which should have been self-executing.

(Docket Entry 118, ¶ 5.)

In response, Defendants appear to rely on contentions that (1) the Orders did not impose any clear obligation to report profits to the Receiver; (2) Rhonda, Charles, and QuintonEli lacked knowledge of such obligations; and/or (3) the Receiver's "silence, disinterest, neglect, or tacit approval was rightfully interpreted by [Charles] and [Rhonda] that there was no requirement or obligation for them to report their activities or their future contractual compensation" (Docket Entry 123 at 8). (See id. at 5-8.)[7] Those arguments do not address the relevant issue. The Orders reserved to the Receiver the right, as to "any profits" of QuintonEli and "any additional income or profit [] generated by" Rhonda and/or Charles, to "distribute, maintain, or manage these funds <u>in his sole discretion</u>." (Docket Entry 119-1 at 10, 15 (emphasis added).) The Orders thus clearly declared that only the

---

[7] As evidenced by a letter from the Receiver addressed to counsel in this matter (and attached to Plaintiffs' Response), the Receiver takes issue with Defendants' characterization of his activities. (See Docket Entry 142-1.) Resolution of that dispute is not necessary at this juncture.

-16-

Receiver could maintain or manage any additional income or profits received by Rhonda, Charles, and/or QuintonEli. Any conduct by Rhonda, Charles, and/or QuintonEli maintaining or managing any such funds (e.g., by causing the deposit of such funds into bank accounts to which the Receiver lacked access) would appear to violate this proscription. Furthermore, any dispute regarding the Receiver's approval of Rhonda, Charles and QuintonEli's actions with respect to profits is more appropriately resolved at a hearing rather than on the instant Motion.

Moreover, in what only casts doubt on Defendants' contentions that they lacked awareness of their obligations regarding additional income and/or profits, Defendants offer no explanation for Charles purportedly informing the Receiver that the deal from which these profits stem had "fallen through" (and that he was "managing" to survive through friends and family (Docket Entry 142-1 at 2)). (See Docket Entries 123, 150.) Nor have Rhonda, Charles, or QuintonEli offered an explanation for the need for a new bank account, separate from those disclosed to the Receiver, and which Defendants established at a bank without a nearby physical location (see Docket Entry 142-1 at 2 n.1). Under these circumstances, Rhonda, Charles, and QuintonEli must show cause why the Court should not hold them in contempt.

## CONCLUSION

Defendants have offered no basis for the Court to reconsider the Orders under Federal Rule of Civil Procedure 54(b) or to grant prospective relief under the equitable principles of Rule 60(b)(5).

-17-

Moreover, Plaintiffs have made a showing sufficient for the Court to require Rhonda, Charles, and QuintonEli to appear and to show cause why the Court should not hold them in contempt for violating the Orders.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Show Cause and for Contempt (Docket Entry 118) is **GRANTED** and Rhonda Byrd, Charles Washington and QuintonEli Development, Inc. shall show cause why the Court should not hold them in civil contempt for violating the Orders granting a preliminary injunction and appointing a receiver in this matter. The Court will enter a further Order or Notice regarding the time, place, and manner by which such cause shall be shown.

**IT IS RECOMMENDED** that Defendants Rhonda Byrd, Joseph Byrd, John S. Washington, Charles Washington's and all related Company's Motion for Relief from Orders for Receivership & Injunction (Docket Entry 122) be **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 16, 2013